# HAYNES & HAYNES
## ATTORNEYS AT LAW

Alicia K. Haynes  
Kenneth D. Haynes  
Of Counsel:  
Charles E. Guerrier

1600 WOODMERE DRIVE  
BIRMINGHAM, ALABAMA 35226  
WWW.HAYNES-HAYNES.COM

Tel: 205-879-0377  
Fax: 205-879-3572

December 12, 2023

Clerk of Court  
U.S. Court of Appeals for  
    the Eleventh Circuit

    Re:    *Freddie Seltzer, et al. v. Morris-Shea Bridge Co., Inc., et al.*  
            Docket No. 21-13764  
            Significant Supplemental Circuit Authority

Dear Clerk:

    I submit this letter brief on behalf of Appellant Larry Coleman ("LColeman").

    Appellant argues that the district court erred, in part, by failing to apply the motivating factor standard to his race-based Title VII wage and termination claims. (LColeman Opening Brief: 31 – 41.) In response, Appellees raise two related arguments: 1) in order to rely upon the motivating factor theory of liability (frequently labeled "mixed-motive"), Appellant must concede that Appellees acted for a legitimate reason; and 2) having failed to make such a concession, Appellant is restricted to the "single-motive" theory of liability as articulated in *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019). (See Appellees' Brief: 34 – 40.)

    The Circuit recently rejected these very arguments in *Phillips v. Legacy Cabinets*, __ F.4th __, 2023 WL 8519216, (11th Cir. Dec. 8, 2023) (copy attached to this letter). Legacy Cabinets had argued that Phillips could not claim that discrimination was "*a* motivating factor" without first conceding that it was not the "single, true reason" for defendant's actions. *Id.* Legacy had relied upon a series of unpublished decision, including *Smith v. Vestavia Hills Bd. of Educ.*, 791 F.App'x 127 (11th Cir. 2019), for the proposition that "a single-motive case is not transformed into a mixed-motive case merely because the employer raises a legitimate non-discriminatory reason for its action." *Phillips* at *11 n. 13. These are the same

1

arguments which Appellees have made in this case, including the citation to *Smith*. (Appellees' Brief: 38.)

      The Court in *Phillips* was unpersuaded by those arguments, particularly because Phillips had raised the "mixed motive" theory below. *Id.* The same can be said as to Appellants in this case. Appellants specifically argued both "single motive" and "motivating factor" theories before the District Court. (Doc. 112:28 – 30; 28 n. 303; 32 – 36.) The Panel considering this case should reach he same conclusion as the Panel in *Phillips* and conclude that the District Court erred by failing to analyze Appellants' Title VII race discrimination claims under the motivating factor standard.

                                  Respectfully submitted,

                                  Charles E. Guerrier
                                  Counsel for Larry Coleman.

      I hereby certify that the foregoing contains 334 countable words and that, on December 12, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                  Charles E. Guerrier

2023 WL 8519216
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

Theresa PHILLIPS, Plaintiff-Appellant,
v.
LEGACY CABINETS, Defendant-Appellee.

No. 22-10057
|
Filed: 12/08/2023

Appeal from the United States District Court for the Northern District of Alabama, D.C. Docket No. 1:20-cv-01548-CLM

**Attorneys and Law Firms**

Jon C. Goldfarb, Lieselotte Carmen-Burks, Christina M. Malmat, L. William Smith, Wiggins Childs Pantazis Fisher & Goldfarb, LLC, Birmingham, AL, for Plaintiff-Appellant.

Mark T. Waggoner, Hand Arendall Harrison Sale, LLC, Birmingham, AL, Christine Harding Hart, Hand Arendall Harrison Sale, LLC, Mobile, AL, for Defendant-Appellee.

Before Wilson and Jill Pryor, Circuit Judges and Covington,[*] District Judge.

[*] Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

**Opinion**

Jill Pryor, Circuit Judge:

*1 Theresa Phillips worked for over six years at a factory run by Legacy Cabinets. Her manager, Derrick O'Neal, fired her in 2019. Phillips is a white woman; O'Neal is a Black man. O'Neal says he fired Phillips for insubordination after she repeatedly complained about having to work over the weekend and then publicly insulted him on the factory floor. Phillips says O'Neal fired her because she is white. She denies insulting O'Neal and claims that two Black coworkers who complained about their schedule alongside her were not punished at all.

After her termination, Phillips sued Legacy, alleging employment discrimination under Title VII and 42 U.S.C. § 1981. The district court granted Legacy's motion for summary judgment, concluding that Phillips had presented no evidence of discriminatory intent. We disagree.

Viewing the evidence in the light most favorable to Phillips, as we must at this stage, we hold that a reasonable jury could find that Legacy discriminated against Phillips when it punished her more harshly than her Black coworkers for similar conduct. And so we reverse the district court's grant of summary judgment to Legacy and remand for further proceedings.

**I. BACKGROUND**

**A. Phillips's Termination**

Legacy Cabinets, LLC, is a cabinet manufacturer based in Eastaboga, Alabama. Theresa Phillips, a white woman, began working for Legacy in 2013, first as a temporary worker and eventually as a full-time employee. Phillips worked on a "hanging line," inspecting and repairing cabinets overhead with about 18 other employees.

Phillips and her coworkers on the hanging line were supervised by a line leader and an operations manager, who oversaw other departments as well. When she was terminated, Phillips's line leader was Shayne Hanna, a white man, and her operations manager was Derrick O'Neal, a Black man. Around the time O'Neal took over as operations manager, Legacy was busy enough that employees "started working longer hours and longer shifts," sometimes putting in "12 to 14 hours Monday through Sunday." Doc. 15-1 at 16.[1] By the time Phillips was fired, this schedule was beginning to take its toll on employee morale.

[1] "Doc." numbers refer to the district court's docket entries.

One Friday, O'Neal gathered his team for their daily "huddle" and informed them that they would have to work the next day—with the promise that they would have Sunday off. Predictably, Phillips and her coworkers were unhappy about the news, and many expressed frustration that they were working so much.

The next day, several members of the team were late or absent. Derrick Stockdale, one of Phillips's Black coworkers, arrived two hours late, coming in only after someone called to remind him. Even Hanna, the line leader, failed to show up on time. Because of these absences, the team fell further behind

schedule, and the plant managers decided that the employees would need to work on Sunday after all. Once again, O'Neal gathered the employees for their daily huddle and relayed the news.

*2 Phillips and Legacy agree that most team members were unhappy and there was "moaning and groaning" all around. Doc. 15-2 at 21. They also agree that Phillips, Stockdale, and Tavia Craig—another of Phillips's Black coworkers—all spoke up during the huddle. But Phillips and Legacy disagree about the way in which Phillips addressed O'Neal in that moment, and they dispute what happened between Phillips and O'Neal later.

### 1. Phillips's Version of the Facts

According to Phillips, when O'Neal announced that employees would have to work on Sunday, Stockdale and Craig "were loud," saying that "they didn't want to work" and "cussing" with words like "hell and damn and the 'F' word." Doc. 15-1 at 23. Phillips nodded her head in agreement with Stockdale and Craig but did not speak up until O'Neal specifically asked, "Have you got something you want to say?" Id. Phillips responded that "it was unfair that [she and her coworkers] had been working these late hours and long weeks" and pleaded that they were "all tired." Id. At this point, O'Neal "started blowing up" and "getting really angry." Id. He told Phillips that Alabama was a right-to-work state and he could set whatever hours he wanted. O'Neal then sent everyone home except Phillips, whom he asked to stay back and go to his office with Hanna.

Once in his office, O'Neal suspended Phillips until Monday. During their conversation, O'Neal reminded her that he had recently given her a ten-dollar Chick-fil-A gift card "[f]or doing a good job." Id. at 16. Phillips replied that the gift card was still in her car "if he wanted it back," but O'Neal said that he did not. Id. at 26–27. Phillips then walked out of the office with O'Neal, while Hanna walked in the other direction.

As soon as Hanna was gone, O'Neal turned around "real quick," "got in [Phillips's] face," and, unprovoked, told her she was fired. Id. at 27. He also said that she should not apply for unemployment or look for another job in the cabinet industry "because he would make sure [she] didn't get it." Id. at 25. Then, while Phillips was "just standing there," O'Neal called someone on the radio and said that Phillips was being "irate." Id. When Phillips told O'Neal that this was "stupid" because she had just been "standing there" silently, O'Neal falsely relayed on the radio that Phillips had called him stupid. Id. Phillips eventually gathered her belongings and was escorted off the premises. Legacy later told Phillips that she had been fired for "insubordination," but it would not elaborate further.[2]

2   The Legacy employee handbook states that conduct such as: (1) "deliberately interfering with operations"; (2) "insubordination or refusal to carry out any instruction from a supervisor"; or (3) using "profanity" could result in disciplinary action "up to and including immediate termination of employment." Doc. 15-1 at 52–53.

### 2. Legacy's Version of the Facts

Legacy presents a different version of events. According to O'Neal, when he gathered his team for their Saturday huddle and told them they would need to work on Sunday, "[Phillips] and a couple more guys[ ] kept interrupting." Doc. 15-2 at 21. Unlike Phillips, neither O'Neal nor Hanna recalled any cursing from Stockdale or Craig. When O'Neal asked for the chirping to stop, "everyone except [Phillips] kind of backed off and let [him] finish talking." Id. But Phillips continued to interrupt, "saying it's against the law, that you can't schedule us to work on Sunday." Id. Once he was done, O'Neal dismissed everyone except Phillips. He then asked her and Hanna to come to his office because he was "shocked at [Phillips's] attitude." Id. at 22.

*3 As the trio walked to his office, O'Neal said, Phillips continued to insist that he could not schedule her to work on Sunday. O'Neal responded that he could "schedule it and you can choose to come or not." Id. at 22. Phillips then "went on telling [O'Neal] that this place [is] going to crap ... because of [him]" and that he "didn't know what [he] was doing." Id. Noting that she was "disgruntled," O'Neal suggested that Phillips go home until Monday—though he assured her that she was not fired. Id.

After they left O'Neal's office, Phillips continued to be disruptive, stopping other employees to complain and calling O'Neal "stupid" several times. O'Neal warned Phillips that if she called him stupid again he would have to fire her. Undeterred, she responded, "[y]ou are stupid, and this place is going to shit." Id. at 23. As promised, O'Neal fired Phillips on the spot and escorted her out of the building. Later,

during his deposition, O'Neal explained that he fired Phillips "[f]or being insubordinate and disrespectful out on the floor" and for resorting to "name calling" because he "didn't want that to spread through the floor ... the way she was being disrespectful to a manager." *Id.* at 30.

**B. Phillips's Lawsuit Against Legacy**

Phillips sued Legacy, alleging that she was fired because of her race in violation of Title VII and 42 U.S.C. § 1981. Her complaint alleged that race was the but-for cause of her firing—known as a "single-motive" or "pretext" theory of discrimination—or, in the alternative, that it was "at least a motivating factor in the termination decision"—known as a "mixed-motive" theory.

After discovery, Legacy moved for summary judgment, arguing that Phillips could not satisfy the three-part burden-shifting framework for single-motive discrimination cases articulated in *McDonnell Douglas*.[3] Legacy argued that Phillips could not establish a prima facie case of discrimination because she could not point to a valid non-white comparator whom O'Neal treated more favorably than her. Even if Phillips could establish a prima facie case, Legacy argued, summary judgment was appropriate because the company had proffered a legitimate, nondiscriminatory reason for firing her—insubordination—and she had no evidence showing that this reason was pretextual.[4]

---

[3]   *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[4]   Legacy's motion for summary judgment did not explicitly address Phillips's mixed-motive theory. Prodded *sua sponte* by the district court, Legacy filed supplemental briefing on this issue, arguing that (1) Phillips could not rely on a mixed-motive theory because she would not concede that Legacy had any legitimate reasons for firing her, and (2) even if Phillips could assert a mixed-motive theory, she had no evidence that race was "a motivating factor" in her termination.

Phillips urged the court to deny Legacy's motion and allow her to proceed to trial. In support of her prima facie case, Phillips identified at least 14 non-white employees whom she said Legacy had treated more favorably than her. Specifically, she pointed to Stockdale and Craig, both of whom made disruptive comments at the Saturday huddle without punishment. She also presented disciplinary records from Legacy showing 12 instances in which other non-white employees engaged in insubordinate conduct but were not fired. At least three of these employees—Tavia Slater, Kathy Groce, and Taneesha Williams—were supervised by O'Neal. Although O'Neal's testimony suggested that Phillips had been more disruptive than her proposed comparators, Phillips's own testimony contradicted that account. Given these competing narratives, Phillips argued, a reasonable jury could find that she was punished more harshly than her non-white comparators for similar conduct; therefore, she satisfied the first step of the *McDonnell Douglas* framework.

*4 Next, Phillips argued that her own testimony's inconsistency with Legacy's proffered reason for her termination supported an inference of pretext. According to Phillips, this evidence of pretext, combined with her comparator evidence, was enough for a reasonable jury to find that race was the real "but for" cause of her termination. Alternatively, she argued that her comparator evidence supported an inference that race was at least "a motivating factor" in O'Neal's decision to fire her, precluding summary judgment on her Title VII claim under a mixed-motive theory of discrimination.

**C. The District Court's Decision**

The district court granted Legacy's motion for summary judgment. To start, the court agreed with Phillips that she had established a prima facie case of discrimination, satisfying the first step of the *McDonnell Douglas* framework. Rejecting Legacy's argument to the contrary, the court found that Phillips had identified at least two valid, non-white comparators, concluding that "a reasonable juror could find ... that Phillips was similarly situated to Stockdale and [Craig] during the Saturday group meeting or to other minority employees that O'Neal called to his office but did not fire." Doc. 29 at 12. Because these non-white comparators were treated more favorably than Phillips for (by her telling) similar conduct, the court determined that Phillips had made out her prima facie case. But the court also concluded that Legacy had sufficiently rebutted any presumption of discrimination by presenting a valid, nondiscriminatory reason for Phillips's termination—her insubordinate comments to O'Neal both during the huddle and after they met in his office.

The final blow to Phillips's case came at the pretext stage, in which the court considered whether Phillips could establish that Legacy's proffered reason for her termination was merely a pretext for racial discrimination. The court concluded that,

even accepting Phillips's testimony and viewing the facts in the light most favorable to her, Phillips had established only "pretext of *something*." *Id.* at 13. In the court's view, "Phillips ha[d] no evidence from her incident that would prove that O'Neal fired her because she was white." *Id.* at 14. Although disciplinary records showed that O'Neal had failed to fire Black employees for insubordinate conduct, the court said, these records, "viewed as a whole, tend[ed] to *disprove* Phillips'[s] claim," because at least two white employees were spared as well. *Id.* The court made no mention at this stage of Stockdale or Craig, the two comparators closest to Phillips.

The district court also granted Legacy's motion with respect to Phillips's mixed-motive theory. According to the court, "Phillips fail[ed] to prove a mixed-motive case for the same reasons" that she failed to establish pretext—there was simply no "evidence that would allow a reasonable juror to find that race played a role in O'Neal's decision to fire Phillips." *Id.* at 17. The district court thus entered summary judgment for Legacy.

This is Phillips's appeal.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party." *State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1178 (11th Cir. 2023). Summary judgment is appropriate when the evidence, viewed in that light, presents no genuine dispute of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is genuine if it has a real basis in the record and the evidence is such that a reasonable jury could rule in favor of the nonmovant. *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

## III. DISCUSSION

*5 Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). Similarly, "[s]ection 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); *see* 42 U.S.C. § 1981. Discrimination claims brought under Title VII may be pursued under a "single-motive" theory—in which the employee alleges that unlawful bias was "the true reason" for an adverse employment action, *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016)—or a "mixed-motive" theory—in which she alleges that bias was simply "*a* motivating factor" for the adverse action, "even though other factors also motivated the practice," 42 U.S.C. § 2000e–2(m) (emphasis added). Section 1981 claims brought alongside Title VII claims may be pursued under the single-motive theory only. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. ——, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356 (2020).[5]

---

[5] Single-motive discrimination claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

Phillips argues that she should be allowed to proceed to trial on both theories. For the reasons stated below, we agree.

### A. Phillips's Single-Motive Theory

Where, as here, an employee bases her single-motive discrimination claim on circumstantial evidence, we generally apply the *McDonnell Douglas* burden-shifting framework. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Under this framework, the employee must first establish a prima facie case of discrimination by showing that (1) "she belong[ed] to a protected class," (2) "she was subjected to an adverse employment action," (3) "she was qualified to perform the job in question," and (4) her "employer treated similarly situated employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) (internal quotation marks omitted). If the employee establishes a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its actions. *Id.* at 1221. If the employer articulates such a reason, the employee must then show that the employer's stated reason was merely a pretext for unlawful discrimination. *Id.*

Here, the district court determined that Phillips had made out a prima facie case and could show that Legacy's proffered reason was "pretext of *something*." Doc. 29 at 13. But the court concluded that Phillips had failed to show that unlawful discrimination was the true reason for her termination.

Phillips argues that this conclusion was flawed. Her evidence of pretext, combined with the comparator evidence considered by the court at the prima facie stage, should have been enough to send her case to the jury, she says. Legacy disagrees. It argues that the district court erred in the first place by concluding that Phillips had made out a prima facie case. And even if she could make out a prima facie case, Legacy says, she failed to show that its explanation for her firing was pretextual, let alone that it was a pretext for racial discrimination.

We begin by addressing Legacy's contention that Phillips failed to make out a prima facie case. We then consider whether she has presented sufficient evidence from which a reasonable jury could determine that Legacy's proffered explanation for her firing was a pretext for race discrimination.

1. Phillips Has Made Out a Prima Facie Case of Discrimination.

Legacy does not dispute that Phillips made out the first three elements of a prima facie case: (1) she was a member of a protected class, (2) she suffered an adverse employment action, and (3) she was qualified for her position. The only issue at this stage, then, is the fourth element, whether Phillips has shown that Legacy "treated similarly situated employees outside her class more favorably." *Lewis*, 918 F.3d at 1221. We agree with the district court that Phillips has met this burden.[6]

---

[6] An employee may also satisfy the fourth element of her prima facie case by showing that she was "replaced by someone outside of [her] protected class." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). Here, as the district court found, "Phillips sufficiently established that she was replaced by a non-white employee." Doc. 29 at 10 n.2.

\*6 "[A] plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were similarly situated in all material respects." *Id.* at 1218 (internal quotation marks omitted). Generally, this means that a comparator will (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; and (4) share the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

Phillips identified at least 14 non-white comparators who worked with her at Legacy, but much of her argument focuses on just two: Stockdale and Craig. Phillips says that both men were present during the Saturday huddle and "started fussing" when O'Neal mentioned that they would need to work on Sunday, raising their voices to argue with O'Neal and using words like "[h]ell and damn and the 'F' word" to express their displeasure. Doc. 15-1 at 23. Despite this disruptive and disobedient conduct, Phillips says, O'Neal focused his anger—and disciplinary actions—on her, even though she simply "agreed that it was unfair that [they] had been working these late hours and long weeks." *Id.*

We conclude that a reasonable jury could find that Stockdale and Craig engaged in similar conduct yet were treated differently. Legacy does not dispute that these men were subject to the same workplace policies as Phillips, fell under the same supervisor, and had similar employment histories. Nevertheless, Legacy argues that Stockdale and Craig are not similarly situated to Phillips because "neither of them continued to interrupt O'Neal as he was speaking to the group" in the Saturday huddle, and neither of them made "disrespectful and insubordinate comments towards O'Neal" after being taken to his office. Appellee's Br. at 29. But this distinction turns on conduct that Phillips denies—a dispute of fact that renders this issue unsuitable for adjudication at the summary judgment stage. *See Strickland*, 692 F.3d at 1154 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (internal quotation marks omitted)).

Although it is a closer question, a reasonable jury could also find that three more of Phillips's coworkers—Slater, Groce, and Williams—engaged in similar conduct without comparable punishment. According to Legacy's own records, O'Neal disciplined each of these employees for insubordination during their time with the company. Slater, for example, was verbally reprimanded for telling O'Neal that "she [was] going home" if he did not turn on a fan, Doc. 17-4 at 5; Groce was given a written warning for "using offensive

profanity towards her supervisor," *id.* at 12; and Williams was admonished for repeatedly "verbaliz[ing] negative opinions about other team members and superv[isors] in group settings," *id.* at 2. Likewise, Legacy's records reflect that when O'Neal heard Williams continue to "comment" on the issue, he asked her to return to his office, but she refused. *Id.* This is evidence from which a jury could find that, like Phillips, each of these employees engaged in some form of insubordinate conduct. Unlike Phillips, none of them was fired.

As with Stockdale and Craig, Legacy argues that Slater, Groce, and Williams are not valid comparators because they did not "engage[ ] in the same[ ] highly unique conduct as Phillips"—that is, continuing to argue with and make disrespectful comments toward O'Neal after being told to stop. Appellee's Br. at 30. But, again, this argument presupposes that O'Neal's version of events is correct, a determination that this Court is not permitted to make.

*7 Because a reasonable jury could decide to credit Phillips's testimony over O'Neal's—and thus find that Phillips was punished more harshly than her similarly situated non-white coworkers—the district court did not err in determining that Phillips had made out her prima facie case.

2. Phillips Has Presented Evidence of Pretext for Racial Discrimination.

Phillips does not dispute that Legacy has proffered a legitimate reason for her termination. Indeed, O'Neal's account of Phillips's repeated insubordination—if true—would be an understandable reason to end her employment. O'Neal's testimony thus was sufficient to dispel any presumption created by Phillips's prima facie case and shift the burden back to her to demonstrate that this explanation was simply a pretext for unlawful discrimination. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The district court concluded that Phillips had fallen short: although a reasonable juror could find that Legacy's reason was "pretext of *something*," the court said, Phillips had presented no evidence that it was a pretext for racial discrimination. We disagree.

Once an employer has offered evidence of a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to show the asserted reason was pretextual. This burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* However, "[s]howing only that the employer's proffered reason is false does not necessarily entitle a plaintiff to get past summary judgment." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). To survive summary judgment, a plaintiff must present sufficient evidence for a reasonable jury to conclude "not just that [the employer's] proffered reasons for firing her were ill-founded but that unlawful discrimination was the true reason." *Id.* at 1267.

We start by considering whether Phillips has presented sufficient evidence for a reasonable jury to conclude that Legacy's proffered reason for firing her was pretextual. We then address the question at the core of this appeal: whether Phillips can show that the true reason for her termination was unlawful discrimination.

(a) *Phillips's Evidence of Pretext*

To establish pretext, an employee must "cast sufficient doubt on the [employer's] proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that [they] were not what actually motivated its conduct." *Combs*, 106 F.3d at 1538 (internal quotation marks omitted). The employee achieves this by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (internal quotation marks omitted).

Viewing the evidence in the light most favorable to Phillips, we conclude that she can show that Legacy's proffered reason for firing her was false. Although O'Neal says that he fired Phillips for arguing with him during the huddle and then repeatedly calling him "stupid" and criticizing his leadership after he suspended her for the weekend, Phillips denies that any of this happened. Thus, if a jury chooses to believe Phillips over O'Neal, it will likely conclude that Legacy's proffered explanation is false and that she was fired for some other reason.

*8 Legacy argues that Phillips's "general denials" are not enough to establish pretext. Appellee's Br. at 24. "Phillips

may dispute some of what she said," and she may deny being disrespectful or insubordinate, "but she cannot demonstrate that O'Neal's reasons to terminate her were false or that O'Neal's subjective response to the comments that she made to him was false." *Id.* at 34.

Legacy is correct that an employee is "not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." *Id.* at 32 (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). It is also correct that "[t]he inquiry into pretext centers on the employer's beliefs" about the employee's conduct, "not the employee's beliefs" about her own actions. *Id.* at 33 (quoting *Alvarez*, 610 F.3d at 1266); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) ("Whether [an employee's] conduct was insubordinate is not an issue for this Court to referee."), *abrogated on other grounds by Lewis*, 918 F.3d at 1218. Phillips could not prevail, then, by arguing that she did not believe her actions to be insubordinate or that she should not have been fired for her insubordinate conduct—but that is not what she says. Instead, Phillips insists that the conduct itself never happened.

Phillips does admit that she and others spoke up during the Saturday huddle and complained about having to work on Sunday. But Legacy has never suggested that this conduct alone was the reason for her termination. Nor could it, given Phillips's claim that Stockdale and Craig were also "fussing" and "cussing" at O'Neal during that time.[7] Doc. 15-1 at 23. Indeed, Legacy argues that Phillips was not fired until *after* she accompanied O'Neal to his office and "continued to make disrespectful and insubordinate comments towards O'Neal," Appellee's Br. at 29—comments that Phillips denies making at all.[8] Because the plausibility of Legacy's proffered reason for firing Phillips depends entirely on disputed issues of fact, the district court did not err in concluding that a reasonable jury could find that this reason was pretextual. But the core question remains: is there sufficient evidence for a jury to find that the real reason was unlawful discrimination?

[7] To be clear, Legacy is free to argue before a jury that Phillips's conduct during the huddle was measurably worse than that of Stockdale and Craig and thus warranted disparate treatment. At the summary judgment stage, however, this claim conflicts with Phillips's own testimony that she spoke up only after O'Neal asked for her opinion and then said only: "I don't think it's fair. We're all tired." Doc. 15-1 at 22.

[8] According to Legacy, Phillips "does not dispute" that she made insubordinate comments after being called into O'Neal's office, including saying that "it was illegal to work on Sundays," that O'Neal "did not know how to talk to people or how to treat people," and that she would return the Chick-fil-A gift card O'Neal gave her for being a good worker. Appellee's Br. at 34. This argument falls flat. To start, Phillips does appear to dispute telling O'Neal that it was illegal to work on Sundays, and she does not admit telling O'Neal that he did not know how to treat people. And even though Phillips agrees that she offered to give back the Chick-fil-A gift card, O'Neal never suggested that this statement influenced his decision to fire her.

### (b) Phillips's Evidence of Racial Discrimination

*9 "The critical decision that must be made is whether the plaintiff has create[d] a triable issue concerning the employer's discriminatory intent." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (internal quotation marks omitted). "Title VII functions only as a bulwark against unlawful discrimination; it does not substitute the business judgment of federal courts for any other nondiscriminatory reason." *Id.* at 1330. As this court repeatedly has recognized, "employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* at 1338 (internal quotation marks omitted). It is not enough, in other words, for Phillips to prove that Legacy is lying about the true reason for her termination; to escape summary judgment, she must produce sufficient evidence for a reasonable jury to find that the true reason was discrimination.

The district court concluded that Phillips had not met that burden. We think she has. Put simply, Phillips's evidence of pretext, *combined* with her testimony describing how O'Neal treated her more harshly than her similarly situated non-white comparators, is sufficient for a reasonable jury to find discriminatory intent. This is especially true with respect to Stockdale and Craig, two non-white employees who allegedly engaged in similar conduct as Phillips at a similar time and yet went unpunished.

Legacy argues that this evidence is not enough. "Even if the Court were to ... consider [Stockdale and Craig]," Legacy says, "that plus the limited record that Phillips presented of other disciplinary records is not sufficient to establish evidence of discrimination." Appellee's Br. at 14. Legacy's argument is twofold. First, it says, Phillips was treated differently for different conduct, undermining any claim of discrimination. "[W]hat happened to Phillips is not comparable to [Stockdale or Craig]," Legacy argues, because neither of them engaged in the same disruptive and insubordinate conduct as Phillips—during the huddle or after. *Id.* at 36. This argument, rejected at every stage of our analysis so far, is no more convincing here. It again ignores the fact that, by Phillips's telling, she did not engage in the conduct O'Neal alleged. Whether this testimony is credible is a matter for the jury to decide. Should a jury believe it, however, O'Neal's decision to single out Phillips for punishment while ignoring similar—or worse—conduct from Stockdale and Craig provides at least some evidence of discriminatory intent. The same may be said of O'Neal's more forgiving treatment of Slater, Groce, and Williams—Phillips's other non-white comparators.[9]

U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

*10 Second, Legacy argues that "a prima facie case does not, on its own, establish pretext." *Id.* at 40. Quoting this Court's decision in *Flowers*, Legacy insists that "making a prima facie case and merely contradicting the [defendant]'s proffered legitimate, nondiscriminatory reason" is no longer enough to escape summary judgment. *Id.* (quoting 803 F.3d at 1339). Now, an employee must "produce *additional* evidence suggesting discrimination after contradicting their employer's stated reasons." *Id.* (quoting 803 F.3d at 1339) (emphasis added by Legacy).

It is true that, in *Flowers*, this Court determined that the employee's evidence of pretext, combined with his prima facie case, was not enough to support a finding of discrimination—but the key component of that decision was the employee's lack of valid comparators. 803 F.3d at 1338–40. In that case, we explicitly rejected the employee's proposed comparator evidence, noting that "[t]he obvious differences between Flowers's circumstances and those of his purported comparators are hardly the stuff of an apples-to-apples comparison." *Id.* at 1340.[10] Lacking valid comparators, this Court noted that "[t]he only evidence that Flowers offers that even touches on his race is the fact that he became the first black head football coach in Troup County since 1973." *Id.* at 1338.

---

[9] The district court made no mention of Stockdale or Craig at the pretext stage of its analysis. Addressing Phillips's other comparators, however, the court concluded that "the disciplinary records, when viewed as a whole, tend to *disprove* Phillips'[s] claim of racial bias" because O'Neal had *not* fired two other white employees for insubordinate conduct at other times in his tenure. Doc. 29 at 14 (emphasis in original) (citations omitted). But Title VII does not "give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). The ultimate question is not whether O'Neal discriminated against all white subordinates, but whether he discriminated against Phillips because she was white. Evidence that O'Neal failed to fire other white employees for insubordination, "although relevant" to the question of his intent, "is certainly not dispositive," and is better left to the jury to weigh against Phillips's own comparator evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

[10] The district court in *Flowers* determined that the employee had established his prima facie case "without evidence that similarly situated comparators were treated differently" because he was replaced by someone of a different race. *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 1 F. Supp. 3d 1363, 1366 (N.D. Ga. 2014); *see also id.* at 1371 n.8. Neither party challenged this determination on appeal. *Flowers*, 803 F.3d at 1333.

Here, the mere fact that Phillips can establish her prima facie case and show "pretext of *something*" is insufficient to escape summary judgment. But the specific evidence she used to get to that point—including evidence of potential comparators—is enough that a reasonable jury who believes Phillips's testimony may find discriminatory intent. *See Wilson*, 376 F.3d at 1088 ("[E]vidence of pretext may include ... the same evidence offered initially to establish the prima facie case."); *see also Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998) (recognizing that "the evidence in a prima facie case might be strong enough to also show pretext"). It

is certainly true that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false," will not always be enough to support a finding of unlawful discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). [11] But, depending on the circumstances, that combination may be enough to send the issue to a jury. *Id.* The district court thus erred in granting Legacy's motion for summary judgment on Phillips's single-motive theory of discrimination.

[11]    "For instance, an employer would be entitled to [summary judgment] if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097. Neither of these circumstances is present here.

### B. Phillips's Mixed-Motive Theory

Unlike Title VII claims brought under a single-motive theory of discrimination—which "require a showing that bias was the true reason for [an] adverse action"—claims brought under a mixed-motive theory require the employee to show only "that illegal bias ... 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Quigg*, 814 F.3d at 1235 (quoting 42 U.S.C. § 2000e-2(m)). This requirement "can be established with either direct or circumstantial evidence." *Id.* But, because the mixed-motive theory does not depend on "proof of a single, 'true reason' for an adverse action," an employee relying on circumstantial evidence is not required to satisfy the *McDonnell Douglas* burden-shifting framework. *Id.* at 1237. Instead, she can survive summary judgment simply by producing "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff and; (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." *Id.* at 1232–33.

*11 Here, the district court concluded that Phillips could not proceed under her mixed-motive theory "for the same reasons" that she "could not prove pretext under *McDonnell Douglas*—i.e., [she] fail[ed] to present evidence that would allow a reasonable juror to find that race played a role in O'Neal's decision to fire [her]." Doc. 29 at 17. [12] Unsurprisingly, Legacy agrees. According to Legacy, "[t]he only possible evidence of discrimination that Phillips cites in support of her argument that race was a motivating factor [is] O'Neal's allegedly more favorable treatment of other black employees." Appellee's Br. at 48. This comparator evidence, Legacy argues, "falls short of [implying] that Phillips's race was a motivating factor" in her termination. *Id.* But we have already held that Phillips's comparator evidence is sufficient for her to proceed to trial on her arguably more burdensome single-motive theory. Therefore, the district court erred in granting Legacy's motion for summary judgment on Phillips's mixed-motive theory of discrimination. [13]

[12]    Phillips argues that Legacy failed to move for summary judgment on her mixed-motive theory of relief and that the district court erred by *sua sponte* directing Legacy to brief the issue. But Legacy acknowledged Phillips's mixed-motive theory in its motion for summary judgment and argued that Phillips had failed to provide evidence of *any* discriminatory intent, an argument applicable to either theory. The district court then allowed the parties to submit additional briefing on Phillips's mixed-motive theory. "[S]o long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary judgment *sua sponte* is entirely appropriate." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999).

[13]    In addition to its arguments on the merits, Legacy insists that Phillips cannot proceed under a mixed-motive theory because she "has always disputed that she engaged in behavior that warranted her termination and has consistently asserted that the reason for her termination was pretextual and false." Appellee's Br. at 44. According to Legacy, in other words, Phillips cannot claim that racial discrimination was "*a* motivating factor" in her termination without first conceding that it was not the "single, true reason" for it. To support its position, Legacy cites a series of unpublished decisions for the proposition that "a single-motive case is not transformed into a mixed-motive case merely because the employer raises a legitimate, non-discriminatory reason for its actions." *Id.* at 45

(quoting *Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 131 (11th Cir. 2019) (unpublished)). Unpublished decisions, of course, are not binding. *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018). Further, unlike the plaintiffs in Legacy's cited cases, Phillips has pleaded and argued a mixed-motive theory from the start. *Compare* Doc. 1 ¶ 35 ("[E]ven if [Legacy] had legitimate reasons for terminating her, [Phillips's] white race was at least a motivating factor in the adverse employment actions [Legacy] took against her."), *with Fonte v. Lee Mem'l Health Sys.*, No. 20-13240, 2021 WL 5368096, at *4 (11th Cir. Nov. 18, 2021) (unpublished) ("[The employee] did not allege a mixed-motive claim before the district court."), *and Stevenson v. City of Sunrise*, No. 20-12530, 2021 WL 4806722, at *7 (11th Cir. Oct. 15, 2021) (unpublished) (concluding that the employee failed to plead a mixed-motive claim), *and Smith*, 791 F. App'x at 131 ("[The employee] did not plead or prove a mixed-motive case."). We are thus unpersuaded that Phillips cannot proceed under a mixed-motive theory of discrimination.

### IV. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand to the district court for further proceedings.

**REVERSED and REMANDED.**

**All Citations**

--- F.4th ----, 2023 WL 8519216

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.